I'm Timothy Walsh, and I want to say that my client, Claude Cossu, and I are pleased and privileged to be here this morning. You want to move over in front of that mic? Good. Do the same thing everyone else. I'm sorry. My name is Timothy Walsh. I want to say that my client, Claude Cossu, and I are privileged and pleased to be here this morning. The Court asked us to address two issues. Number one, what state law applies to Jefferson Pilot's indemnity claim? Well, the Civil Code of California, starting with 2772, discusses the indemnity issues, and specifically 2778 is a real great outline of what they call rules of interpretation. And I've not seen that in a lot of code sections where it really gives you analysis of what is required for indemnity. And the problem that Jefferson Pilot has is it really doesn't get to first base on this code section literally, because the first issue, number one, it says, Upon an indemnity against liability expressly or in other equivalent terms, the person is indemnified as to recover upon becoming liable. Now, it doesn't necessarily mean that a settlement such as we have here excludes the issue of whether or not he's liable, but the cases are pretty clear that the indemnity has to be liable for the claims by the third parties. In this case, the customers of Mr. Cossu bought the promissory notes. The first case that I've seen, the oldest case, is a 1913 case of Eva v. Anderson, where it deals with stockholders and liability, and expressly in that case talks about this subsection of the code. Can I ask two preliminary questions to clear any cobwebs that are in my mind about this case? Uh-huh. The first one is this is not a case where there's a judgment, stipulated or otherwise, that says that Jeff Pilot is liable to these clients. That's correct. There's a settlement agreement. Okay. A sealed settlement agreement. The second is, am I right that there's no assignment from any of these clients to Jeff Pilot? That's my understanding. Okay. I may be wrong, and that was my understanding. If I'm wrong on either one, or you are, I'm sure, we'll be told. You'll call us on that. Go right ahead. All right. Now, in the Eva v. Anderson, the Court says the indemnitor did not agree to pay any debt or liability of Smith Company. He did agree to pay such debt for which the plaintiff might be bound as a stockholder. And then they say, of course, in either case, he would be under the necessity of proving that he was liable for the amount alleged because of his position. Jefferson Pilot, in our case, never sought to prove anything. They just simply said, we paid this amount, and this was a settlement. But that's a very critical aspect, and that addresses exactly the law in your question number one. Did any of these cases go to trial? No. They were all in arbitration, and they all settled before arbitration trials actually heard. In the arbitration, there were no awards made? No, no award was made. It was a settlement. They were all settled ahead of time. Well, when you have a company like Pilot that has a reputation for integrity and for the sale of appropriate securities, and all of this happens, is there any capacity to settle these cases and get your indemnity without all of the public appropriate that could go along with the trial? Well, I think they can and did settle probably because of that reason. They have economic interests and image interests through their potential stockholders and other business dealings, which certainly I believe was a factor in them deciding to settle these cases, not necessarily because they're reliable or not necessarily because of the facts of the underlying claims, which, strangely enough, we don't even know the underlying claims because they never presented the complaints even to the bankruptcy court. We're assuming a lot, but we don't know what the claims are. But, yes, I agree that that would be a motivation of Justin Pilot to settle. Well, so what would your remedy be that we go back and require a trial as to at least one of these to see what the claim was and whether Pilot would be liable? Well, I think the remedy would have been what the cases tell us, that the trial court erred in not requiring proof of liability, at least to that amount. They should have brought something to the bankruptcy court showing why Jefferson Pilot was liable to these customers. What would be necessary to establish that? Well, they would ‑‑ Jefferson Pilot, to be liable, interesting enough, would have to be actively engaged in the deception, not simply a passive defendant, according to the cases. If you look at Hauser and you look at Asplen, both of which are ‑‑ Hauser was a side in this court, which delineated what the original Hollinger court talked about, that what would it take for Jefferson Pilot to actually be liable to these people? One thing, they would have to know what was going on. They would have to have some financial benefit from what was going on. They would have to perhaps have supplied the actual products, have some involvement in the chain of reaction in this case. None of these things were present for Jefferson Pilot to become liable. Why wouldn't an assignment work? Pardon? Why wouldn't an assignment work? You can only assign what you have to assign. If they assign the claim, well, fine, then let's ‑‑ then you have to prove your claim. In any insurance issue, like uninsured motorists, they pay and you assign the right. The insurance company still has to go to court and prove their case against the uninsured person who ran into their client. And Jefferson Pilot needed to prove his case. They needed to prove, if you're looking straight indemnity, which was what the court asked us to address, they need to prove that they are liable to the investors, and they can't show that under Asplen or Hauser, to prove that it's an assignment. Now they have to bring one or more customers to the bankruptcy court and specifically say such things as, yes, and here's something that's absent. Yes, I relied on that information. All they're saying is that, well, there was a claim. Mr. Kosu sold them some things. There was a claim. We don't know what the claim was. Maybe the claim was strictly against Jefferson Pilot for liability under those Hauser and Asplen criteria. I don't know. They didn't bring that to the court, and at the very least they should have brought that underlying complaint that we could look at, and then they would have needed to satisfy the actual bankruptcy criteria beyond assignment. Is this something that is non-dischargeable? What's your client's position with regard to the payment of fees and costs below? I'm sorry. What's your client's position? I think we clearly understand your client's position with respect to the total amount paid out. My understanding is that some portion of that represents the fees and costs that Jefferson Pilot incurred in defending against these claims by your client's customers. We've not criticized the amounts, whether they're fees or costs, or the amount paid. We know they've been paid, and we don't criticize the attorney's billing or how much it costs them to defend. Well, my question is what's your client's position with respect to the recoverability of that under indemnity? It is part and parcel as one of these cases. They're co-related that if there's not an underlying liability, there's no claim to come to the indemnitor for. So he is not liable for the costs. So your client's position is that fails as well. As well. That's correct. They're both together. You have to have some liability in order to go after the indemnitor for anything. I haven't seen any cases that say, well, they have to defend. Actually, he wasn't given an opportunity to defend. Maybe if that had occurred, here we have a case. We asked you to defend us, and they refused. One might argue that, well, the defense costs are recoverable. But the cases that we look at appear to say that even those costs are co-related. If you don't have liability, you don't have a duty to defend either. The contract itself simply says it's a pretty standard agree to hold harmless for mining all claims, et cetera, et cetera.  Okay. Thank you. We'll hear from Jefferson Pilot at this time.  Counsel. Thank you. Appreciate it. Thank you, Your Honors. I'm Gilbert Katchadourian, representing Jefferson Pilot Securities Corporation, the appellee. Before I touch on my prepared remarks, I'd like to briefly touch upon the questions that Judge Hawkins and Judge Fletcher raised a few moments ago. First, with respect to the underlying claims that the debtor is suggesting that they weren't aware of the underlying claims, we would submit that that is disingenuous because the trial record establishes the basis of those claims. It further establishes that the SEC has barred Mr. Kossuth from trading securities because of the wrongful conduct in connection with these cases. He defrauded customers of approximately $3 million by selling them worthless, valueless, illegal securities. And that's all on the record. So we'd submit that the awareness of the underlying claims of the customers is clear and was established at trial. With respect to the assignment of the claims. Do you agree no judgment, no assignment? I would. Yes, the cases were settled. There was no formal judgment. With respect to the assignment. And Jeff Byler did not obtain an assignment of the individual customers' claims that they might have had against Mr. Kossuth. Actually, Your Honor, there was some discussion of that at trial, and yes, there were some assignments. The trial court in its judgment suggested that it need not go that far and to address the basis of liability in connection with an assignment because there were other reasons to address liability. Where's that in the record? That would be in Judge Russell's memorandum decision upon remand, and it would be in, beginning at page 67 of the appendix of record submitted by Mr. Kossuth. And it's at, my recollection is, it is at the oh, yes, Your Honor, that would be on address whether Jefferson Pilot's claim is allowable on other grounds, such as the fact that some of the claimants assigned their damages against Kossuth to Jefferson Pilot. Now, Your Honors, the Court, by order, asked us to address two questions, and I'd like to proceed directly to those two questions. The first question was what State law applies to Jefferson Pilot's claim against Kossuth? And we believe the short answer is common law fraud, not the indemnity obligation. We believe the indemnity obligation bolsters the argument, but it's not the cornerstone of the judgment. And here's why I ---- We step back and take one step in basics. Is it your contention that no particular State law applies? Well, Your Honor, it's our contention that under Grogan v. Garner, the Supreme Court used the phrase State law expansively. In fact, they said we use the phrase term State law expansively to refer to all nonbankruptcy law that creates substantive claims. And then this Court, in the Rubin decision that we cite in our brief, states that the elements of a fraud nondischargeability action are the same elements as common law fraud. And, in fact, there are quite a few cases out of the ---- other cases, in fact, out of the Ninth Circuit that recognize that, so that a 520 Bankruptcy Code Section 523, a to a fraud nondischargeability case, the elements of nondischargeability already embody the, quote, State law that the Supreme Court was referring to, and then we would submit common law fraud. So ---- Counsel, our briefing order, I think, was interested in what indemnity law applies. Exactly. Your Honor, and here's how I think would be an appropriate way to respond to that. The way we'd like you to respond, by way of beginning, is the State law that applies to the issue of indemnity in this case is the State law of ---- As in California? Yes. Arizona, Nevada, Nebraska, New Hampshire. We ---- I understand, Your Honor. We ---- the contract between the employment agreement or the representative agreement between Jefferson Pilot and Mr. Kosu stipulated New Hampshire law. And you believe that that's the law that would apply to any issue of indemnity? We ---- with respect to the dispute under the contract, yes, although that was never raised at trial and has not been an issue in the case until today. But it would still be our position that the ---- when the Supreme Court discussed State law, it said all nonbankruptcy law, but that this Court has recognized that fraudulent misrepresentation, the common law theory of fraudulent misrepresentation, is already embodied in 523a2a. And perhaps it's somewhat unique as compared to some of the other types of nondischargeability, such as taxes or fines or spousal support, where they ---- those matters, you would have to look to a separate State law to determine the validity of the underlying tax lien or ---- But don't we have to look to the indemnity law of some place? Well, we think that the Court has used the indemnity concept as a measure of proximate cause, that one of the final element of a nondischargeability case for fraud and common law fraud is that the damages were proximately caused by the debtor's conduct. And both the trial court and the district court expressly found that the damages that were suffered by Jefferson Pilot were caused by his conduct. That would be a wonderful argument if your client here today were Mr. and Mrs. Joe Investor. Your client is Jefferson Pilot. That's correct. And your task here in defending what the bankruptcy court did is to tie Jefferson Pilot's payment of these amounts to the former clients of Mr. Kosu to its liability, as we understand it. That's correct. And I believe it's appropriate to do that through the traditional common law theory of fraud and proximate causation. And, in fact, as we cited in our brief, the Securities Exchange Commission has specifically recognized that the type of damages being suffered by Jefferson Pilot is the types of damages that are created by the exact conduct that was engaged in by the debtor here, what was called selling away. In fact, we cite an NASD opinion that states, as the SEC has stated on numerous occasions, selling away is a serious violation, and Rule 3040 is designed not only to protect investors from unmonitored sales, but also to protect securities firms from exposure to loss and litigation in connection with sales made by persons associated with them. Could Jefferson Pilot have gone to court in a court of competent general jurisdiction and sued Mr. Kosu on the very theory you've just articulated? I believe so. But they did not? No. And if they were here as the result of a judgment obtained against Mr. Kosu saying that he had damaged the reputation of Jefferson Pilot and caused it harm and caused it cost and otherwise damaged it, it would be a different situation, wouldn't  Perhaps the analysis would be easier. So we're back to, and you know, one of the purposes of our asking questions is to give counsel the opportunity to know what our concerns are and to address them in the best way they know how. On what basis do we connect the payments that Jefferson Pilot made to the clients of Mr. Kosu to its liability? Again, Your Honor, we believe that that was done correctly by the trial court and the district court when it used the proximate cause analysis, the final element of fraud, to connect those dots, because it was clear from the record that his conduct and actions and misrepresentations caused the damages. I'm trying to think of a case, an insurance case. There's an automobile accident, and I have a fender bender, and I turn it over to my insurance company, and the person inside the car that I got the fender bender with claims all sorts of damages that may or may not have occurred, and my insurance company decides to pay whatever they want, even over my objections. What's the liability connection between the insurance company and that hypothetical and people with these claimed injuries? Well, I know that that involves a very expansive area of law that is very complicated. But in this case, I would submit that Jefferson Pilot isn't an insurer, and it wasn't being sued as an insurer. It was being sued for the reasons outlined in the testimony at the trial court. We are seeking recovery under an indemnity theory, and at least this one-third of the panel is concerned about whether or not Jefferson Pilot has a responsibility under the applicable law of indemnity to establish that they are, in fact, liable to the Kosu customers. We believe that we sufficiently established the liability at trial level and created a nexus between the actions of the debtor and our exposure, Jefferson Pilot's exposure. If, as you say, New Hampshire law applies, do you have any case in New Hampshire that sets forth your theory of approximate cause? No, Your Honor. We at trial argued the elements of common law fraud as embodied in 523A2A of the Bankruptcy Code. We didn't believe, and the trial court didn't request that we engage in analysis regarding a contractual dispute application of law. So we applied common law fraud. But, you know, to use Judge Hawkins' example, you couldn't just turn around and seek indemnity from, say, the driver of the car because you paid, you happened to say, let's avoid a lot of litigation here and give this person the million dollars he wants. They wouldn't have a good case. It may be defined as approximate cause, but they wouldn't have a good case of indemnity, would they? Well, perhaps not, Your Honor, but we would submit that at trial the basis for the claims was fully litigated, and the debtor had the opportunity at trial and attempted to challenge the validity of the payments, the reasonableness of the payments, the amount of the payments, and was unable to establish to the trier of fact that that was unreasonable at all. Well, that's kind of an estoppel theory? Well, we looked at it at the time as it was unable to persuade the trier of fact that the payments were unreasonable. And as the Thai Court case we cite in our brief, that's their opportunity to do that and to show that they were unreasonable. In fact, the district court found that there was sufficient evidence to validate the legitimacy of the payments as demonstrated in the record. Okay. All right. Thank you for your argument. We'll hear a rebuttal at this time. Judge, the Thai Court case doesn't necessarily impose obligation on the defendant. That was heard in this very court. And it presupposed in that case that there was some liability. And, in fact, there was in the Thai Court case some significant liability. The issue, though, of whether we're talking New Hampshire or California, it's pretty universal. And I have a Missouri case of Missouri Pacific Railway v. Sonkin, 274 Southwest 930. It says, of course, well settled that the indemnity cannot recover beyond the terms of the contract. Voluntary payment made without regard to legal liability is not recoverable. Indemnity against losses does not cover losses for which the indemnity is not liable to a third party and for which the indemnitor improperly pays. And a similar case of a California case of the Southern Cal Gas v. Ventura Pipeline, the same thing. That's 150 Cal App Second, 253. They're saying the same thing. In that case, the indemnity agreement covered certain things. And the indemnity was found not to be liable. Indemnitor can't pay for things for which they're not liable. Why isn't it enough that Jefferson Pilot says, Kosu, you defrauded us by lying to us about your outside activities. And this caused us harm, both reputational and otherwise. And as a result of your behavior, your bad behavior, we had to pay out these monies, and we want them back. If that was the basis of their case, they would have pled that that caused us harm and our reputation. They did not. In fact, they denied that the payments were because of harm and reputation, and I suggested that they were, that you simply paid because you're a deep pocket, you don't want your name out there with a judgment, your stockholders, you know, make a payment, cover it with a judgment, everybody's happy. I suggested to the trial court, there were probably many reasons why these payments were made, and least of among them was liability. And Jefferson Pilot denied that they did anything wrong even in the bankruptcy trial court, and I'm sure they did in the arbitration. I think they paid them out for a number of reasons, but wouldn't they still bring a case to the bankruptcy court as to what those reasons were? And they did not. They didn't even bring the complaint. So how do you propose that they must establish this claim as an adjudicated amount that may be recognized in indemnity? Well, of course, they can't. Whether it's adjudicated, well, if it was adjudicated, they still are going to have to bring some information or some testimony to the bankruptcy court. Your position is that on this record they haven't done that? They haven't done it and they can't do it because they weren't liable in the first place. Okay. All right. Thank you. Thanks for your argument. Both sides of the argument. Thank you. Appreciate it. The case, just a very interesting case, just argued will be submitted for decision. We'll proceed to the last case on the calendar this morning. We'll get out of bankruptcy court and get into the First Amendment.
judges: Lay, B. Fletcher, Hawkins